419 S.E.2d 903

**Arnold COMBS, d/b/a Combs Enterprises, Plaintiff Below, Appellee,**

v.

**Shirley H. McLYNN and Alyce C. Estrada–Palma, Defendants Below, Appellants.**

No. 20729.

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided July 16, 1992.

William H. Bean, Moorefield, for appellee.

J. David Judy III, Judy & Judy, Moorefield, for appellants.

PER CURIAM:

This is an appeal by Shirley H. McLynn and Alyce C. Estrada–Palma from an August 28, 1991, final order of the Circuit Court of Hardy County awarding the appellee, Arnold Combs, d/b/a Combs Enterprises, $7,341 from appellant Estrada–Palma and $5,705 from appellant McLynn. The appellants contend that the appellee is not entitled to any amount over and above the contract prices agreed to by the appellee and the individual appellants in their two separate contracts. We reverse the decision of the Circuit Court of Hardy County and remand the matter with directions that the appellants be required to pay the $4000 remaining on their contracts less the offset previously determined by the lower court, as explained at the conclusion of this opinion.

I.

Appellants Estrada–Palma and McLynn are both retired secretaries who had previously worked in Washington, D.C., for the federal government. In September 1989, the appellants contracted with the appellee, in Mathias, West Virginia, to construct homes for two individual lots which the appellants had purchased near Lost River in Hardy County, West Virginia.[1] The contract between appellant McLynn and Combs was executed on September 1, 1989, and the contract between Estrada–Palma and Combs was executed on September 18, 1989. Both contracts provided for the pur-

---

1. At the time of the trial, appellant Estrada–Palma was 71 years of age, and appellant McLynn was 65 years of age. The evidence introduced at trial indicated that although appellant Estrada–Palma had previously owned a home, appellant McLynn had lived in an apartment and had no prior experience in purchasing or constructing a home.

chase of modular homes to be placed on lots for the total cost of $106,000 for appellant McLynn and $130,000 for appellant Estrada–Palma. The terms of payment were one-third down, with the balance, except $4,000, to be paid upon delivery of the homes to the job site. The final payment of $4,000 was to be paid upon final completion of the homes.[2]

The contracts were prepared by Combs and his father-in-law, and neither appellant had any input into the terms or conditions of the contract. Both contracts provided that the seller, as noted above, would complete a turn-key job and further provided that upon encountering any unusual circumstances or conditions, the seller would stop work and contact the buyers to determine what they "want to do and the amount of additional costs."

Upon completion of the two homes, Combs demanded final payment of $4,000 from each of the appellants. The appellants refused to pay that balance until certain corrections were made for work which was allegedly improperly completed by Combs.[3] Thereafter, on February 10, 1990, Combs billed appellant Estrada–Palma for $7,049.75 and appellant McLynn for $5,932.75 for additional expenses incurred in excavation, dynamite, blasting, equipment, and rock removal.

Mr. Combs testified that he had walked the lots prior to signing the contracts and had recognized that some blasting of existing rock would be necessary. The appellants, however, testified that they had no knowledge of required blasting until appellant Estrada–Palma actually witnessed the blasting activity. Furthermore, the appellants denied knowledge of any possible obligation to pay any additional sums over and above the contract prices for blasting or other excavation activity. Mr. Combs, however, presented testimony indicating that although he had originally recognized the excavation problems and had included some expenditure for excavation within the contract price, he subsequently discovered that additional equipment was necessary and that unforeseen circumstances existed. Mr. Combs testified that, pursuant to the contractual requirement regarding unusual circumstances, he stopped work and notified appellant Estrada–Palma of the problem. Mr. Combs testified that his conversation with appellant Estrada–Palma occurred in the presence of Charles Moton, a machine operator employed by Mr. Combs. Mr. Moton testified that he did overhear a conversation between Mr. Combs and appellant Estrada–Palma in which Mr. Combs explained the excavation problems and appellant Estrada–Palma agreed to additional compensation.

With regard to appellant McLynn's knowledge of the necessity for additional compensation for excavation, Mr. Combs introduced a telephone record indicating

2. The conditions of sale for the two homes consisted of the following:

*Special Conditions:*
Seller will provide purchaser set of plans and specifications.
Seller and purchaser will agree upon any additions or deletions to basic plans.
Seller will have house set. Seller will also be responsible for obtaining any missing parts or replacements for broken parts determined to be responsibility of manufacturer and having them installed.
Seller will complete turn-key job (finish house; hook up plumbing and electric; provide well, pump, two outside faucets and septic; grade and seed yard. No shrubbery will be planted).
"Unusual circumstances or conditions:" Seller will stop work and contact buyers to determine what they want to do and the amount of additional costs.

Seller will not be responsible for any toxic or hazardous materials on site or utilized in the construction of the modular house.
Upon execution of this contract and order, it cannot be canceled, and purchaser will be responsible for acceptance of house and payment of balance due.

3. Testimony on behalf of the appellants indicated that a high-wall created by the excavation still existed behind the appellants' homes. Further, boulders, mud, and water had washed into an area between the highwall and the homes, with mud and water having washed against and under the homes. A gully had also washed between the two homes, an access road had subsided, seeding of the front yard was inadequate, and touch-up paint in various rooms within the homes was a different color from the original paint. In addition, replacement of the front steps was necessary and shingles had blown off of the Estrada–Palma home.

that a twenty-three minute telephone conversation had taken place between Mr. Combs and appellant McLynn on September 14, 1989. Although Mr. Combs testified that he told appellant McLynn during that conversation that additional work and compensation would be required, both appellants deny any conversation between them and Mr. Combs regarding extra money for additional excavation work.

The appellee filed two separate civil actions on April 12, 1990, against the appellants seeking the final payment of $4,000 from each appellant and additional charges for excavation of $5,932.75 from appellant McLynn and $7,049.75 from appellant Estrada–Palma. The appellants filed answers with no counterclaims, the two actions were consolidated, and the parties waived their right to a jury trial. The matter was tried before the Circuit Court of Hardy County, and the court rendered judgment in favor of Mr. Combs on May 10, 1991.

The lower court further ordered the parties to attempt to agree upon a monetary amount to settle the claim. Upon the parties' failure to do so, the lower court issued its finding on July 11, 1991. The court found that appellant Estrada–Palma was entitled to an off-set of $3,709 for the unsatisfactory work which was alleged and that appellant McLynn was entitled to such off-set in the amount of $4,228. Recognizing the $4,000 still owned on the contract by each party and the additional excavation costs incurred by Mr. Combs, the lower court calculated the damages as follows:

Appellant Estrada–Palma

$4.000.00 still owed on contract
+7,050.00 additional excavation
−3,709.00 for unsatisfactory work
_____
$7,341.00 still owed

Appellant McLynn

$4,000.00 still owed on contract
+5,933.00 additional excavation
−4,228.00 for unsatisfactory work
_____
$5,705.00 still owed

## II.

The appellants claim that the circuit court erred in granting Mr. Combs any damages in excess of the contract prices. In support of that contention, they argue that the complete and valid contracts entered into between the parties provided for a turn-key delivery of the homes. The turn-key job, they contend, required Mr. Combs to complete the construction tasks and bear the risk of rising costs, delays, or other problems. Further, the appellants contend that because Mr. Combs had knowledge, prior to entering into the contracts, that some amount of excavation or blasting would be necessary, the unusual circumstances clause should not be applied. Any ambiguity within the contracts, they maintain, should be resolved against the seller, Mr. Combs.

We agree with the lower court's determination that the unusual circumstances clause was somewhat ambiguous. A slight inconsistency in the contract is created by the characterization of the agreement as a turn-key contract and the inclusion of a clause which attempts to provide a method of restructuring the agreement upon encountering "unusual circumstances." We have consistently held that any ambiguity in a contract will be strictly construed against the preparer of such contract. *Nisbet v. Watson*, 162 W.Va. 522, 530, 251 S.E.2d 774, 780 (1979); *accord Hays and Co. v. Ancro Oil & Gas, Inc.*, 186 W.Va. 153, 155, 411 S.E.2d 478, 480 (1991).

Mr. Combs specifically acknowledges his recognition, prior to entering into the agreements, of the necessity for blasting and excavating the property. Yet Mr. Combs now contends that he was unable to ascertain the full extent of the blasting or excavation requirement upon his inspection of the property prior to entering into the agreement. Based upon the explicit designation of the agreement as a turn-key contract, we must conclude that once Mr. Combs determined prices to be charged to the appellants and entered into written contracts for those specific prices, he had taken responsibility for any risks of rising costs or delays.

■ Although Mr. Combs may have intended the unusual circumstances clause to address such a scenario, we believe that the clause is inconsistent with the characterization of the contract as a turn-key agreement. While it is possible to conceive of a situation wherein the unusual circumstances clause might apply (i.e., some factor not even remotely contemplated by the parties or not considered in calculating the original prices), we do not believe that the clause can be applied to alter the outcome in the present case due to Mr. Combs' prior knowledge of the necessity of at least some degree of blasting and excavating.

■ Of more impact upon our conclusion, however, is the issue of proof of oral modification of the contract. Assuming, *arguendo*, that no ambiguity exists and that the unusual circumstances clause could be properly applied, Mr. Combs still has not adequately proven that the contracts were orally modified to provide for additional compensation. As we have previously explained, " '[t]he burden of proving an oral modification of a written contract is on the party seeking to establish such modification, and such party must demonstrate by clear and positive evidence that the minds of the parties definitely met on the alteration.' Syl. pt. 4, *Bischoff v. Francesa*, 133 W.Va. 474, 56 S.E.2d 865 (1949)." Syl. Pt. 5, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986). We also stated in *Troy* that "an oral contract changing the terms of a written contract must be so specific and direct that it leaves no doubt that the parties intended to change what they previously solemnized by formal contract." 176 W.Va. at 606, 346 S.E.2d at 755. With both appellants having denied knowledge of any agreement for additional compensation, it can hardly be argued that "no doubt" exists regarding the intention of the parties to increase the contract prices in contemplation of additional excavation and blasting requirements.

We do not believe that the facts support a finding of mutual understanding regarding any modification of the original contract. That original contract provided for a turn-key completion of the construction at a specified price. We therefore conclude that the appellee is not entitled to any amount over and above the contract prices as agreed to by the appellee and the individual appellants in their two separate contracts. We affirm the decision of the lower court with regard to the monetary amounts representing unsatisfactory work performed on the homes, $4,228 for appellant McLynn and $3,709 for appellant Estrada–Palma. We therefore reverse and remand this matter to the Circuit Court of Hardy County with directions to enter judgment in favor of appellant McLynn for $228, representing the amount owed to her by Mr. Combs after deducting the $4,228 for unsatisfactory work from the $4,000 still owed on the contract. With regard to appellant Estrada–Palma, the $4,000 still owed on the contract less the $3,709 for unsatisfactory work leaves her with the obligation to pay Mr. Combs $291.

Reversed and remanded.